Opinion by
 

 Hirt, J.,
 

 Adjoining Greenfield School in the City of Pittsburgh, the school board maintained and operated a public playground for the benefit of the children of that neighborhood. The city authorities undertook to supplement the school program for the summer months of 1937 and on application to the school board a permit was issued to the city for the use of the Greenfield playground for organized play of children under twelve years of age under a recreational leader employed by the city. By the terms of the license the city’s right to the use of the playground was limited to the hours between 9 A.M. and 5 p.m., five days each week during July and August 1937.
 

 By the agreement the city was permitted to use the apparatus on the lot but supplied additional playground equipment including a portable slide for the younger children. This slide consisted of a ladder about 6 feet high hinged at the top to a wooden chute. When set up with the members extended, there was a 'chain con
 
 *64
 
 necting the ladder and the chute which held it rigid and prevented its collapse. At 9 o’clock in the morning of August 25, 1937 Mrs. Hughes, the city’s director in charge of the playground activities, on arrival at the playground, observed that the chain was broken and with some help she collapsed the slide, laying it flat on the ground. It was too heavy for her to remove with the help available, but later, the dismantled slide was moved about 30 feet and was placed on the ground along a fence iat the edge of the playground. By the agreement with the school board the city had the right to use the school building for the storage of equipment but on that day workmen had erected scaffolding inside the entrance to the building which blocked the' passageway at least until after 4:15 in the afternoon when the scaffolding was removed.
 

 Helen Lemak, the minor plaintiff (whom we will refer to as the plaintiff) then a child ten years old, went to the playground about 6:30 in the evening of August 25, 1937. The slide was then standing upright near its usual location apparently ready for use. She had not been on the playground earlier that day and had no notice of the dangerous condition of the equipment. While resting her hand on the slide when another child was using it, the slide suddenly collapsed; one of her fingers was caught between the two members of the slide as they came together and a part of a finger was pinched off.
 

 As to the duty imposed upon a municipality conducting a playground there can be no question. Public places where children play should be safeguarded against that which is likely to harm them.
 
 Novak v. Ford City Borough,
 
 292 Pa. 537, 141 A. 496. A municipality is liable for negligent failure to keep a playground, maintained by it, in a reasonably safe condition for the protection of those invited to come upon it, and this is particularly true in the case of children permitted to
 
 *65
 
 use the playground.
 
 Paraska v. Scranton,
 
 313 Pa. 227, 169 A. 434.
 

 Both the city and the school authorities are chargeable with actual knowledge of the dangerous condition of the slide. A finding of negligence follows from the fact that the defective slide was set up and was in use on the playground at the time of the injury. Whether the jury were justified in charging the city with responsibility for the injury is the question raised, depending for its answer on a consideration of all of the testimony viewed in the light most advantageous to plaintiff.
 

 During the period, the playground was open to children from 9 a.m. to 9 p.mv each day. The city alone was in charge of it from 9 a.m. to 1 p.m. ; from then until 5 p.m. the city arid the school district used the playground in cominon and each supplied a representative directing the play of the children. After 5 and until 9 p.m. the playground was in the exclusive control of the school authorities under the direction of a Mr. Leon, its playground supervisor.
 

 Mrs. Hughes was called as a witness for plaintiff and was positive in her testimony that the slide was at no time set up between 9 in the morning and 3:30 in the afternoon. She then left the playground to take a group of children to another school for games and when she returned at about 5 o’clock she observed the slide lying on the ground beside the fence and she testified that it was in the same position when she left more than one-half hour later. Her testimony, to some extent, is contradicted by Anna Lemak, a sister of plaintiff who said that she went to the playground that afternoon about 3 o’clock to obtain some materials from Mrs. Hughes and at that time the slide was up, standing in its usual place and that the slide was still up when she left between 4:30 and 5 o’clock.
 

 Where the burden of proof is on a plaintiff to establish certain facts before a recovery can be had, and his
 
 *66
 
 testimony or that of his witnesses on the question is so contradictory as to present to the jury no basis for a finding except upon a mere conjecture, a verdict cannot be permitted to stand.
 
 Goater v. Klotz,
 
 279 Pa. 392, 124 A. 83;
 
 Musleva v. Patton Clay M. Co.,
 
 338 Pa. 249, 12 A. 2d 554. In this situation it was proper to refuse to allow the jury to decide which of these two witnesses for plaintiff was telling the truth. Mrs. Hughes was employed by the city only for the summer of 1937. She has not been in its employ since then and had no interest in the outcome of the suit. She was not called as on cross-examination. There is nothing in her testimony to indicate that she was in any degree a hostile witness, Whose testimony could be discredited by plaintiff under the rule in
 
 Fetterolf v. Yellow Cab Co.,
 
 139 Pa. Superior Ct. 463, 11 A. 2d 516. The jury may pass upon conflicting statements in plaintiff’s testimony on the question of contributory negligence, where the burden of proof is on the defendant. But where the testimony refers to a subject as to which the burden of proof is on the plaintiff the court may not submit evidence “which will merely enable a jury to guess at a fact in favor of a party who is bound to prove it”:
 
 Zenzil v. Del., Lack. & W. R. R. Co.,
 
 257 Pa. 473, 101 A. 809.
 

 The issue therefore is confined to the question whether the failure of the city to have the defective slide removed from the premises, charges it with responsibility for injury during a period when the playground was in the exclusive control of the school board. The case was tried on that issue in the court below.
 

 Mrs. Hughes reported the defective chain to her superior and to Mr. Leon. Its repair involved an operation which could be made on the ground; there was no necessity for its removal for that reason. In view of the nature of the apparatus, negligence did not attach merely from storing the collapsed slide on the playground. The slide was heavy; it required two men to lift it. After the accident, four large boys carried it
 
 *67
 
 away. Though attractive to young children it could not, in all likelihood, be set up by them; the city, therefore, was not bound to anticipate that it would be erected and used by the children. In this respect the present case differs on its facts from those where recovery has been allowed as in
 
 Euler v. City of Pittsburgh,
 
 85 Pa. Superior Ct. 542;
 
 Hogan v. Etna Concrete Block Co.,
 
 325 Pa. 49, 188 A. 763;
 
 Reichvalder v. Boro, of Taylor,
 
 322 Pa. 72, 185 A. 270.
 

 The proximate cause of the injury was the failure of the school’s representative to observe that the defective slide had been erected and was being used by children whose play it was his duty to supervise. This is not a case of an unguarded dangerous appliance. During the entire playday either a representative of the city or of the school board was in attendance and at least during a part of the period of their common use, both were there. In this case the storage of the equipment on the ground did not result in the injury. It was caused by an independent and intervening factor, the failure of the school representative in his duty of proper supervision, to see to it that the defective slide was not put into use. Legal responsibility in such a case rests upon the intervening cause, and unless that was the fault of the original wrongdoer, the latter is relieved from responsibility.
 
 Quinn v. Phila.,
 
 224 Pa. 176, 73 A. 318;
 
 Rhad v. Duquesne Light Co.,
 
 255 Pa. 409, 100 A. 262.
 

 Judgments reversed and directed to be entered for defendant n. o. v.